Plaintiff appeals from the dismissal of his personal injury action for want of prosecution. We affirm.
The complaint, filed on October 12, 1984, in Marengo Circuit Court, alleged that plaintiff Scullin was negligently or wantonly injured by the defendant Cameron. The complaint was filed by Michael Blalock, a Birmingham lawyer. Also listed as counsel for plaintiff was Rocco J. Leo, also of Birmingham.
On November 5, 1984, defendant filed a motion to dismiss, which was overruled on November 6, 1984.
On December 12, 1984, plaintiff propounded interrogatories to defendant, and these were answered on August 8, 1985. In turn, the defendant propounded interrogatories to plaintiff on October 17, 1985. On October 10, 1985, defendant deposed two witnesses who were present at the accident scene. Mr. Leo associated another attorney to attend these depositions.
On July 25, 1985, Mr. Leo engaged Wyman Gilmore, an attorney from Grove Hill, to appear at the call of the docket, and engaged Gilmore again on November 7, 1985, for the same purpose. Even so, the record does not disclose that either Mr. Leo or Mr. Blalock at any time withdrew as counsel.
Then, on May 7, 1986, Mr. Robert Roden of Birmingham was associated by Mr. Leo. A short time later, plaintiff was deposed by the defendant in Mobile. This deposition was attended by Mr. Roden's associate, Mr. Jeffrey A. Brooks.
In July 1986, the Marengo Circuit Court mailed to the attorneys of record notices of the pre-trial docket to be called on August *Page 696 
20, 1986. At this docket call, the defendant's counsel was present; however, none of plaintiff's lawyers attended. Nevertheless, defendant's counsel announced he was ready for trial, and, although in his affidavit Mr. Brooks states that he "did not announce ready for trial for the week of September 22, 1986," the motion for continuance filed on September 22, 1986, by his associate, Mr. Roden, states that "[a]t the time Plaintiff announced ready for trial, the Plaintiff's counsel of record, Mr. Robert Roden, was not sent out to trial in the Tenth Judicial Circuit," but that "[a]t this time [September 22, 1986], [he] has been sent out to trial." Nevertheless, the trial docket was mailed to the parties on August 21, 1986, showing that this case was to be the first called for the week of September 22, 1986. Accompanying this trial docket was a pre-trial order that contained, among other things, the following statement:
 "3. At least ten (10) days prior to the published trial date, each party shall deliver to opposing parties and the Clerk of the court, the names and addresses of all witnesss intended to be used at the trial; and in the case of expert witnesses, a short summary of the proposed testimony. Failure to comply with this provision will result in a witness not being permitted to testify unless allowed by the Trial Judge for good cause or to prevent manifest injustice.
". . . .
 "7. All juries will be selected on Monday, September 22, 1986, after the grand jury is impaneled. Attorneys and their clients must be present in Court on this date in order to qualify and select the jury for their respective case. Cases not reached on the day scheduled for trial will be continued from day to day until tried.
 "8. Cases that appear on the trial docket will not be continued except upon written motion and for good cause shown unto the Trial Judge. The motion must be filed with the Court a reasonable time prior to the trial date and must be signed by both the attorney and the party.
 "9. Requests to issue subpoenas for witnesses must be filed with the Clerk together with the appropriate fees a reasonable time before the published trial date. The trial judge will not entertain a motion for continuance for failure of a witness to be present in Court if the request for subpoenas is not filed with the Clerk in a reasonable time to have the subpoena issued and served upon the witness."
In his brief, plaintiff concedes that "[o]n August 26, 1986, Mr. Roden's office received a trial docket for jury cases set in the Circuit Court of Marengo County for the week of September 22, 1986," but he contends that "[a]t that time, Mr. Roden was in New York City and did not become aware of the setting of the case until September 2, 1986."
In compliance with the pre-trial order entered August 20, 1986, the defendant mailed to plaintiff's counsel on September 10, 1986, a list of witnesses and exhibits that they expected to use at trial. Plaintiff, on the other hand, did not deliver such a letter to defense counsel.
Some three weeks before the trial, the defendant contacted T.L. Barrow, an Alabama state trooper, on the possibility of his testifying at trial. Trooper Barrow informed defense counsel that he would be absent from the state on the trial date, and suggested that he be deposed should his testimony be necessary. Apparently, the plaintiff did not contact this potential witness until sometime during the week before trial and more than two years after the officer had investigated the accident in question and prepared a report thereon.
After filing notices on August 26, 1986, the defendant took the depositions of Dr. Judy Travis and Frank Kratzer on September 3; of Jesse Simpson on September 4; and of Lisa Randolph on September 15. The defendant was never informed of any inconvenience to plaintiff caused by these settings, and, apparently, there was none.
On September 5, 1986, defendant requested that Mark Willie and Russell Curtis be subpoenaed to appear as witnesses at trial set for September 22, 1986. *Page 697 
Apparently, plaintiff decided on or about September 12, 1986, to take the deposition of Dr. John A. Tucker, and a message to that effect was left with defense counsel's office. Plaintiff's counsel contacted defense counsel by telephone on Wednesday, September 17, to discuss the scheduling of Dr. Tucker's deposition for Friday, September 19. Having informed plaintiff's counsel that his other engagements would not permit this deposition on that date, the defense counsel suggested alternatives, i.e., that the deposition be taken on Saturday, September 20, or that the physician simply be subpoenaed for the trial scheduled for the following Monday. In response to this conversation, plaintiff's counsel sent a notice to defense counsel of the taking of this deposition for Friday, September 19, which was received by defense counsel on September 18, despite his previously announced conflicts. Plaintiff's counsel then telephoned the trial judge and requested that he require defendant's counsel to attend Dr. Tucker's deposition. The trial court refused this request because plaintiff had not complied with the court's pre-trial order to deliver his list of witnesses. Plaintiff's counsel also requested a continuance then on the multiple grounds that Dr. Tucker and Trooper Barrow would be absent from trial and that Mr. Roden would be engaged in a certain trial in the Tenth Judicial Circuit (Birmingham). It appears that in this conversation Mr. Roden stated that other counsel would be present in Marengo County for the trial should he be unable to attend. The trial court denied the request for a continuance.
On Friday, September 19, 1986, plaintiff had subpoenas issued for Trooper Barrow and for various sets of hospital records of Carraway Methodist Medical Center in Birmingham, Whitfield Memorial Hospital in Demopolis, and Norwood Clinic in Birmingham. On that same day, plaintiff learned that Trooper Barrow would be absent from the state during the week of trial, which was to begin three days later.
On Monday, September 22, 1986, which was the scheduled trial date, the defendant, his attorney, and witnesses from Demopolis, Montgomery, and Mobile, Alabama, as well as Lawrenceville, Georgia, were present in court. Plaintiff was also present with counsel, Mr. Frost and Mr. Brooks. At this time, plaintiff renewed his request for a continuance on the same grounds as asserted before.
In the colloquy that followed between the trial court and counsel, the court observed that the case was the oldest on its docket and that it could find no evidence of any formal discovery begun by plaintiff since interrogatories were filed in December, 1984. The judge denied the motion for continuance "[b]ased upon reviewing the entire file and based upon the argument and based upon the conversations I had with both attorneys Thursday." The following appears in the record:
 "THE COURT: For the record, I'm going to deny the motion for a continuance in this case. The case was filed approximately two years ago. Apparently there was no discovery done until very recently. No one has made the docket calls in the past. I have never seen Mr. Leo. He has never appeared for any docket call. I have never been contacted by anyone about a continuance until Thursday.
 "As I understand it, all of these matters about witnesses and discovery and what not did not surface until the last few days. Therefore, I think it appears to me there has not been sufficient preparation by the plaintiff's counsel, and they are the ones wanting the continuance because of insufficient preparation. I don't think it's proper. The defendant has witnesses and is prepared to go to trial.
 "I deny the motion for a continuance. I don't fault the two gentlemen in court today. I don't know how long they have been involved or whether or not the firm sent them to be present, but apparently someone has not prepared the case for trial whether it be Mr. Leo or another member of the firm. I don't speculate on that. I deny the motion for a continuance. *Page 698 
 "As I understand it, I have been informed you do not wish to go forward and select a jury.
"MR. FROST: That is correct.
 "THE COURT: If you do not, I will enter an order for dismissal. It is the order and judgment of the Court the case is dismissed for want of prosecution for failure to proceed forward with the case. I will enter that judgment and send you a copy.
"MR. HUST: This is with prejudice?
"THE COURT: Yes."
Plaintiff's motion to reconsider was subsequently denied, and this appeal ensued.
Plaintiff, on appeal, argues that the trial court abused its discretion by overruling the motion for a continuance and by dismissing plaintiff's case for want of prosecution.
 I.
In this jurisdiction, it has been "often held that continuances are not favored and that a trial court's denial of a motion for continuance will be upset only when a palpable or gross abuse of discretion has been shown." Johnson PublishingCo. v. Davis, 271 Ala. 474, 496, 124 So.2d 441, 459 (1960). This statement conforms to the general rule as stated in 5A C.J.S. Appeal Error § 1583 at 24, and quoted with approval inSteele v. Gill, 283 Ala. 364, 368, 217 So.2d 75, 79 (1968): " 'As a general rule, an appellate court will not review the action or rulings of the trial court with reference to matters resting in the latter's judicial discretion, unless such discretion has been clearly and prejudicially abused.' " The Court in Steele added at 283 Ala. 369, 217 So.2d 80:
 "Plaintiff cites 5A C.J.S. Appeal Error § 1583 p. 35. In the cited text we read that there is no hard and fast rule by which to determine whether a court has abused its discretion, that the reviewing court is never justified in substituting its discretion for that of the trial court, and that discretion is abused whenever, in its exercise, the court has acted arbitrarily without the employment of its conscientious judgment, or has exceeded the bounds of reason in view of all the circumstances, or has so far ignored recognized rules or principles of law or practice as to result in substantial injustice.
 "Trial courts are charged with the duty to bring cases to trial, or other disposition, as promptly as may be done reasonably according to the rules of law and procedure. . . ."
Prior to the trial court's denial of the continuance in this case, the court had granted four continuances. There had been a lapse of one and one-half years between the last formal discovery exercised by plaintiff and the trial date. Although there is a dispute as to whether plaintiff announced ready for trial at the pre-trial call, apparently word was sent by Mr. Roden's office that the case would be ready for trial. Notice of the trial date was sent to both parties on August 21, 1986, one month before the trial date. Mr. Roden concedes that on August 26, 1986, his office received notice of the trial setting of the case. Although Mr. Roden insists that his associate, Mr. Brooks, notified the trial court's secretary of Mr. Roden's unavailability until the first or second week in October 1986, there was no showing that other counsel was not available. Indeed, Mr. Brooks had attended the plaintiff's deposition in Mobile on May 22, 1986, and was familiar with discovery conducted since May 7, 1986. Mr. Brooks was apparently plaintiff's counsel who was in charge of securing the testimony of Dr. Tucker and Trooper Barrow; he had discussions with both and there is some evidence that during the September 18 conversation between defendant's counsel, Judge Neilson, and Mr. Roden, the latter stated that he would send other counsel should he be unable to attend.
Mr. Roden argues that he should have received a continuance because he was engaged in a trial in Birmingham. This justification has received attention before. In Vold v. Hand,366 So.2d 279, 280 (Ala. 1979), this Court quoted from an earlier decision, City of Birmingham v. Goolsby, *Page 699 227 Ala. 421, 150 So. 322 (1933), on that subject:
 " ' "Ordinarily the fact that an attorney is professionally engaged elsewhere in the trial of a cause does not give an absolute right of continuance, and a denial of the application is generally sustained as an exercise of sound discretion. The courtesy existing between members of the bar, and recognized by trial courts, will usually in such cases enable a counsel to postpone a cause for a few days in one of the courts so as to enable him to be present at both trials. But this is purely a matter of grace and not of law. The rights of litigants in one court are not to be determined by the condition of the docket in another, nor because an opposing counsel has assumed duties in different courts which may conflict. Cases may of course arise when the denial of the right of continuance might amount to an abuse of discretion; but under such circumstances it is not sufficient to show that the absent attorney was expecting a case to be called in another court, but it must be shown that he is at the time actually engaged in the trial of the other cause. Moreover it must be made to appear that under the circumstances other professional advice is unavailable, and that there is a meritorious cause of action or defense thereto which cannot be effectively presented without the presence of the absent attorney." ' "
In this case, none of the conditions recognized in those opinions as mandating a continuance was established here. Plaintiff first stated his grounds for a continuance on September 18. Mr. Roden was not engaged in another trial on that date. It appears from the record that the trial court on that date had clearly considered and ruled upon that ground for a continuance. There is nothing in the record indicating that Mr. Roden or anyone else in his law firm attempted to obtain a continuance in the prospective trial of any other case. Although Mr. Roden asserts in his brief that he was engaged in the trial of a case in Jefferson Circuit Court on September 22, 1986, the case to which he refers, Kynard v. Seaboard Railroad,Inc., CV 82-0837, was not tried on September 22 but was continued generally and then reset for May 11, 1987. Thus, Mr. Roden was not professionally engaged in the trial of another case. At most, it appears that Mr. Roden was "directed to appear" and "be ready for trial" on the Birmingham case. That situation was found in Vold, supra, to be insufficient. Moreover, as we have already observed, it has not been established that other counsel was unavailable, or that this action, if meritorious, could not "be effectively presented without the presence of the absent attorney." Goolsby, supra.
Under these circumstances, we cannot find that the trial court "acted arbitrarily without the employment of its conscientious judgment, or . . . exceeded the bounds of reason in view of all the circumstances, or . . . ignored recognized rules or principles of law or practice as to result in substantial injustice." Steele, supra, 283 Ala. at 369, 217 So.2d at 80. Thus, the denial of a continuance was not error.
 II.
This Court has recognized the necessity of carefully scrutinizing dismissals with prejudice, while at the same time preserving the inherent power of a court to act sua sponte to dismiss an action for want of prosecution when a plaintiff's conduct mandates such action. Smith v. Wilcox County Board ofEducation, 365 So.2d 659 (Ala. 1978). As stated in Selby v.Money, 403 So.2d 218, 220 (Ala. 1981): "In every action there comes a point when the interest of the court in controlling its calendar and the risk to the defendant outweigh the interest in disposing of the litigation on the merits." See also Rule 41(b), A.R.Civ.P., and comments.
Here, when the trial court denied plaintiff's motion for a continuance, the plaintiff refused to proceed with jury selection and trial. It appears that this deliberate action on plaintiff's part was due solely to that denial. Indeed, when plaintiff refused to proceed, the trial court had no alternative but to dismiss the case. Under those circumstances — the continuance having been *Page 700 
properly denied, the defendant and his witnesses being present and ready for trial, and the plaintiff willfully refusing to proceed — this Court cannot hold that the trial court was in error for entering a dismissal. To have done otherwise would, indeed, have been to grant the continuance, which, in its discretion, the trial court had denied.
Let the judgment be affirmed.
AFFIRMED.
MADDOX, SHORES, HOUSTON and STEAGALL, JJ., concur.